UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nancy Lyon Havlik, Alice T. Lyon, and Ross T. Lyon, Individually and as Trustees of the Edward S. Lyon Trust, | |
| Plaintiffs, | No. 1:23-CV-02342 |
| v. | Judge Edmond E. Chang |
| University of Chicago, University of Chicago Contributory Retirement Plan, University of Chicago Supplemental Retirement Plan, and Teachers Insurance and Annuity Association of America, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Nancy Lyon Havlik, Alice Lyon, and Ross Lyon bring this lawsuit on their own behalf and as trustees of the Edward S. Lyon Trust. The University of Chicago and the Teachers Insurance and Annuity Association (TIAA) help administer retirement plans for the University's employees, like Edward S. Lyon. R. 67, Univ.'s SOF ¶¶ 1–4[1]; R. 67-1, Admin. Record at 37–170[2]; R. 70-2, TIAA Exh. 2. The Trustees allege that the Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, by erroneously rejecting Edward's attempt to designate as

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]Unless otherwise noted, citations are to the PDF page numbers of the filing.

beneficiaries his 36 grandchildren.[3] R. 76, Pls.' Br. at 3. The designation relied on Edward's wife Valerie's waiver of her spousal benefits, *id.* at 1, and the Trustees contend that the University's mistake has significant tax implications, *id.* at 3. The University, TIAA, and the Trustees have each filed a motion for summary judgment. R. 66, Univ.'s Mot.; R. 69, TIAA's Mot.; R. 74, Pls.' Mot. As explained below, the Court grants the motions filed by the University and TIAA and denies the Trustees' motion.

## I. Background

The facts below are undisputed. Edward, an employee at the University of Chicago, participated from 1960 until 1996 in the University's contributory- and supplemental-retirement plans. R. 78, Pls.' Resp. to Univ.'s SOF ¶ 3; Admin. Record at 13. TIAA serves as a recordkeeper for the plans. R. 77, Pls.' Resp. to TIAA's SOF ¶ 5; TIAA Exh. 2.

The two plans share key provisions. The vested dollars of each account are paid automatically as either a single-life or joint-and-survivor annuity unless the plan participant elects a different payment method. Admin. Record at 61–62, 124–25. And if a plan participant seeks to "designate a Beneficiary other than his or her spouse to receive that portion of his or her Account that would otherwise be payable to his or her surviving spouse," then the participant may do so "only if the Participant's spouse … waives the Qualified Preretirement Survivor Annuity." Pls.' Resp. to Univ.'s SOF ¶ 21; Admin. Record at 67–68, 130–31. The University has "the

---

[3]This Court has subject-matter jurisdiction over this case under 29 U.S.C. § 1132(e).

discretionary authority and power" to "determine all questions involving the construction and interpretation of the terms," to "resolve all questions regarding the administration," and to "review and resolve all claims for benefits" under the plans. Pls.' Resp. to Univ.'s SOF ¶ 18; Admin. Record at 78–79, 141–42.

In 1998, Edward designated his wife Valerie and the Edward S. Lyon Trust as beneficiaries to the accounts that he maintained under the plans, and Valerie submitted a related spousal waiver of any preretirement survivor death benefit. R. 75, PSOF ¶¶ 1–2; Admin. Record at 13–14, 193–98. Edward's most recent amendment and restatement of his trust occurred on May 23, 2014, Pls.' Resp. to Univ.'s SOF ¶ 3; R. 1-1, Compl. Exh. A at 4, and that same day, Valerie executed a power of attorney under Wisconsin law authorizing Daniel Davies to exercise the power of attorney, Pls.' Resp. to Univ.'s SOF ¶ 5; Admin. Record at 210–18. The authorization gave Davies a grant of general authority and provided special instructions "to transfer … assets of any type over which [Valerie] ha[d] an ownership interest in" and "[t]o name or change the beneficiary or beneficiaries under any … assets, accounts, or interests in which [Valerie] ha[d] the right to name or change." Admin. Record at 213. Valerie also authorized Davies to make gifts and to manage her digital assets. *Id.* at 214.

Five-and-a-half years later, on November 22, 2019, Edward submitted to TIAA another beneficiary-designation form, in which he sought to name as beneficiaries his 36 grandchildren. Pls.' Resp. to Univ.'s SOF ¶ 10; Admin. Record at 200–19. He included in the form Davies's renewed waiver of Valerie's death benefit, and he

3

attached Valerie's 2014 authorization of power of attorney. Pls.' Resp. to Univ.'s SOF ¶ 12; Admin. Record at 206, 210–18.

Edward passed away shortly after, on December 15, 2019. Pls.' Resp. to Univ.'s SOF ¶ 15; Admin. Record at 2. At that time, his accounts under the University's plans totaled $1,210,950.16. Pls.' Resp. to Univ.'s SOF ¶ 16; Admin. Record at 13–14. About two weeks later, TIAA rejected Edward's designation form because, in its view, the form was unsigned. Pls.' Resp. to TIAA's SOF ¶ 14; Admin. Record at 221. (More than two years later, TIAA added that the designation form lacked a proper spousal waiver. Pls.' Resp. to TIAA's SOF ¶ 15; R. 1-7, Compl. Exh. G at 2.) Valerie passed away on December 20, 2020. Pls.' Resp. to Univ.'s SOF ¶ 17; R. 21, Univ.'s Ans. ¶ 13.

Beginning in 2020, the Trustees made several inquiries to TIAA about the distribution of benefits from Edward's trust. R. 84, TIAA's Resp. to PSOF ¶ 9–11; R. 80, Exhs. C–E to PSOF. TIAA ultimately directed the Trustees to the University, so the Trustees submitted a claim with the University in early 2022. Pls.' Resp. to Univ.'s SOF ¶ 23; Admin. Record at 2–4. The Trustees supplemented their claim with a letter from a family-planning attorney who reasoned that Valerie's 2019 spousal waiver was effective. Pls.' Resp. to Univ.'s SOF ¶ 24; Admin. Record at 5–12. The University rejected the Trustees' claim, concluding that Valerie's spousal waiver was ineffective because her underlying power of attorney lacked a grant of specific authority required under Wisconsin law. Pls.' Resp. to Univ.'s SOF ¶ 25; Admin. Record at 13–20. The Trustees appealed the University's determination and provided another attorney's assessment of Valerie's waiver, Pls.' Resp. to Univ.'s SOF ¶ 28–29; Admin. Record at

4

22–23, 26–31, but the University denied their appeal, Pls.' Resp. to Univ.'s SOF ¶ 31; Admin. Record at 185–89.

The Trustees then filed this suit, asserting three theories of liability: first, a claim against the University and TIAA for the benefits due under Edward's plans; second, a claim that the University and TIAA breached their fiduciary duty; and third, a claim of negligence against TIAA for its alleged errors in the month before and years after Edward passed. R. 1, Compl. at 8–13. The parties now each move for summary judgment. Univ.'s Mot.; TIAA's Mot.; Pls.' Mot.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d

451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In deciding cross motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates the Trustees' summary judgment motion, the University and TIAA get the benefit of reasonable inferences; conversely, when evaluating the University's and TIAA's motions, the Court gives the Trustees the benefit of the doubt. *See Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013). This "process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150*, 335 F.3d 643, 648 (7th Cir. 2003). As it turns out, the facts are not really in dispute—the question is who is right on the legal question.

The parties agree that the University has the discretionary authority to interpret and administer the plans. As the Trustees concede, the Court thus reviews the University's exercises of that discretionary authority under a deferential arbitrary-and-capricious standard, setting aside the University's decision only if its denial was "completely unreasonable." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658

6

(7th Cir. 2005) (cleaned up).[4] But even where the arbitrary-and-capricious standard applies, this Court reviews questions of law de novo. *Williams v. Midwest Operating Eng'rs Welfare Fund*, 125 F.3d 1138, 1140 (7th Cir. 1997), *overruled on other grounds by*, *Mers v. Marriott Int'l Grp. Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1022–23 (7th Cir. 1998); *cf. Burns v. Orthotek, Inc. Emps.' Pension Plan & Tr.*, 657 F.3d 571, 574 (7th Cir. 2011) (reviewing legal claim that plan violates ERISA de novo).[5]

### III. Analysis

The parties' dispute centers on two provisions of Wisconsin law governing the scope of powers of attorney. One provision broadly concerns "[e]states, trusts, and other beneficial interests," and generally permits a principal to authorize his agent to "[r]eject, renounce, disclaim, release, or consent to a reduction in or modification of a share in or payment from an estate, trust, or beneficial interest" among other authorities. Wis. Stat. § 244.51(2)(i). The other provision is more specific and requires the principal to "expressly grant[]" his agent certain authorities; among them are the power to "[w]aive the principal's right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan." *Id.* § 244.41(1)(f). The

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[5]The Trustees do not highlight this distinction or argue that the Court should review the University's decision for anything except an arbitrary and capricious decision, but arguments about the proper standard of review are not waivable because "the court, not the parties, must determine the standard of review." *Carnes v. HMO La., Inc.*, 114 F.4th 927, 929 (7th Cir. 2024) (cleaned up).

7

parties agree that these provisions of Wisconsin law have never been interpreted, and they each propose ways to understand the statutes in context.[6] Pls.' Br. at 8–10; R. 68, Univ.'s Br. at 7–8. For example, the University offers that "a survivor benefit under a retirement plan" may be read more broadly than only annuities (though the University maintains that it should prevail under both narrow and broad readings of the statute). Univ.'s Br. at 8.

The parties also disagree on how to characterize the plans. The Trustees contend that the plans are not joint-and-survivor annuities in their entirety, so they reason that a spousal waiver of any survivor benefits does not implicate § 244.41(1)(f). Pls.' Br. at 7–8. The Trustees thus argue that the generally granted power of attorney under § 244.51(2)(i) sufficed to permit Davies to act as Valerie's agent and execute the spousal waiver. *Id.* at 4–7. The Trustees do not, however, argue that Valerie's power of attorney included a specific grant consistent with § 244.41(1)(f). The University, on the other hand, asserts that the entirety of each plan need not be a joint-and-survivor annuity for § 244.41(1)(f) to apply to Valerie's waiver. Univ.'s Br. at 8.

It is worth a quick reminder of the appropriate standard of review. Because issues of statutory interpretation are questions of law, *see Talignani v. United States*,

---

[6]The Court adds that Wisconsin's power-of-attorney statutes were modeled after the Uniform Power of Attorney Act. *Compare* Wis. Stat. § 244.51, *and* Wis. Stat. § 244.41, *with* UNIF. POWER OF ATT'Y ACT § 211 (UNIF. L. COMM'N 2024), *and* UNIF. POWER OF ATT'Y ACT § 201 (UNIF. L. COMM'N 2024). Despite the adoption of the Uniform Power of Attorney Act in 29 states and the District of Columbia, Unif. L. Comm'n, *Power of Attorney Act* (2025), (available at https://www.uniformlaws.org/committees/community-home?communitykey=b1975254-8370-4a7c-947f-e5af0d6cb07c&tab=groupdetails), no other jurisdiction appears to have interpreted an analogous provision.

8

26 F.4th 379, 381 (7th Cir. 2022), they would avoid the arbitrary-and-capricious standard and instead be evaluated under de novo review. On the other hand, if the parties called upon the Court to resolve how best to construe the plans—as annuities or otherwise—then the University's initial determination would be entitled to deference consistent with the plans' terms. But neither of those questions resolves this case. The critical issue here is whether a plan must be a joint-and-survivor annuity in its *entirety* for Wisconsin law to require a more specific grant of power of attorney, and that question is one of law.

But even under de novo review, the University and TIAA are entitled to summary judgment on the Trustees' claim for benefits under Edward's plans. Regardless of whether the entirety of either plan is a joint-and-survivor annuity, Valerie would be required to waive her right to a joint-and-survivor annuity to designate a different beneficiary and thus had to execute a valid, underlying power of attorney permitting Davies to do so. This requirement, which the parties agree is found in the plans, Pls.' Resp. to Univ.'s SOF ¶ 21; Admin. Record at 67–68, 130–31, is also dictated by ERISA, *see* 29 U.S.C. § 1055(c)(2).

The waiver requirement extends to plans that are not wholly joint-and-survivor annuities. "The statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses." *Boggs v. Boggs*, 520 U.S. 833, 843 (1997). The Supreme Court has described the reach of § 1055 as "expansive" because the statute, "as a general matter, appl[ies] to *all* individual account plans and defined benefit plans." *Id.* (cleaned up) (emphasis

9

added); *see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 293 (2009) ("Depending on the circumstances, a surviving spouse has a right to a survivor's annuity or to a lump-sum payment on the death of the participant, unless the spouse has waived the right and the participant has eliminated the survivor annuity benefit or designated a different beneficiary." (citing *Boggs*, 520 U.S. at 843)).

And even if § 1055's broad terms did not answer the question, Valerie's power of attorney still needed an express grant of power of attorney for the right to an annuity that is at issue here. The Trustees acknowledge that Valerie, as a surviving spouse, had at a minimum "the option of receiving benefits as an annuity." Pls.' Br. at 8. But to elect not to exercise this option—which otherwise was the *default* setting, *see* Admin. Record at 61–62, 124–25—Valerie necessarily had to waive her "right to be a beneficiary of a joint and survivor annuity," Wis. Stat. § 244.41(1)(f). The Trustees do not offer any competing account that the plans were not joint-and-survivor annuities by default, and they provide no argument that the plans fall under some exception to § 1055's broad reach, *see Boggs*, 520 U.S. at 843. There thus is no genuine dispute of material fact: the Trustees are not entitled to effectuate the distribution of benefits directly to the 36 grandchildren.[7]

---

[7] At times, the Trustees refer to Valerie's 1998 waiver of spousal benefits. Pls.' Br. at 4, 10, 12; R. 87, Pls.' Reply Br. at 6. But as the University correctly notes, R. 83, Univ.'s Reply Br. at 1 n.2, Valerie's earlier waiver does not validate the 2019 change in beneficiaries, for which a contemporaneous, accompanying waiver was required, and the Trustees do not argue otherwise. Instead, the Trustees appear to refer to the 1998 waiver only for the purpose of contending that Valerie held an enduring intent to waive her benefits as a surviving spouse. But regardless of any decades-earlier intent on Valerie's part to waive her survivor benefits, she did not validly consent in writing to the *2019* designation of beneficiaries as required by

Finally, neither the fiduciary-duty nor negligence claims have merit. As the University and TIAA note, the Trustees expound on neither argument in their motion for summary judgment. Univ.'s Reply Br. at 9–12; R. 85, TIAA's Reply Br. at 3–6. The Trustees do not, for example, explain with supporting authorities why TIAA's initial 2019 response was so belated as to breach any duty (fiduciary or otherwise). And the Trustees fail to identify how the University breached any fiduciary duty if (as the Court has now held) its interpretation of the plans and Wisconsin law were correct.

At most, the Trustees argue in reply that the University breached a duty of loyalty by failing to accept an "accurate[] interpret[ation] [of] Wisconsin law." Pls.' Reply Br. at 10. This, they contend, prevented beneficiary changes from being "processed expeditiously." *Id.* at 11. But aside from the now-obvious missing premise—the Court has now held that University's interpretation was right—a fiduciary has an obligation to "preserve assets to satisfy future, as well as present, claims" and "to take impartial account of the interests of all beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). A fiduciary obligation thus "does not necessarily favor payment over nonpayment." *Id.* And as to TIAA, the Trustees fail to establish that TIAA is even a fiduciary, and any residual claim for state law negligence is preempted by ERISA. *See Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127–29 (7th Cir. 1992).

---

the plans and by ERISA. *See* 29 U.S.C. § 1055(c)(2)(A); *cf. Burns*, 657 F.3d at 575 (rejecting substantial-compliance doctrine under ERISA).

11

The Trustees also advance arguments about an earlier offer of indemnification, the prospect of an interpleader action, and the fact that Valerie was mentally impaired in 2019. But the Trustees do not demonstrate why the University's failure to accept their offer of indemnification or to file an interpleader breached a fiduciary duty or otherwise caused harm in light of the University's correct legal conclusions. And the Trustees' proof of Valerie's mental impairment is limited in the record to a comment made during a 2019 phone call with TIAA. R. 80, Exh. A to PSOF. Even supposing Valerie's condition were to be proven by admissible evidence, the Trustees cannot show a genuine dispute of material fact that the University was aware of Valerie's impairment or that any awareness caused the University or TIAA to miscommunicate some aspect of the plans. And the Trustees have not shown that TIAA committed an error in its ministerial role that is attributable to the University's failure to provide clear terms of its plans. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 471–72 (7th Cir. 2010).

## IV. Conclusion

The Court denies the Trustees' motion for summary judgment, R. 74. The Court grants the University's motion for summary judgment, R. 66, and TIAA's motion for summary judgment, R. 69. The case is dismissed, and final judgment shall be entered.

ENTERED:

　　s/Edmond E. Chang　　
Honorable Edmond E. Chang
United States District Judge

DATE: September 24, 2025